UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

POWER HOME SOLAR LLC,

       Plaintiff,

v.

ORBIT MARKETING, LLC, D/B/A CLIMAX SOLAR; and JOSHUA THOMPSON,

       Defendants.

                                      Case No. 1:21-cv-00910

                                      Hon. _____

## COMPLAINT AND JURY DEMAND

Plaintiff, Power Home Solar LLC ("PHS"), a nationally recognized and established solar energy company, brings this action against the Defendants for having misappropriated PHS's confidential and proprietary business information and trade secrets, which Defendants then used to launch their newly formed business.

## PARTIES

1. Plaintiff, PHS, is a Delaware limited liability company with a principal place of business located at 919 N. Main Street, Mooresville, North Carolina.

2. Defendant, Orbit Marketing, LLC ("Orbit") is, upon information and belief, a Michigan limited liability company with a principal place of business located at 1604 W. Milham Avenue, Portage, Michigan.

3. Defendant, Joshua Thompson ("Thompson") is, upon information and belief, the sole managing member of Orbit. Thompson, upon further information and belief, resides at 13772 East MN Avenue in Climax, Michigan.

4. As of April 24, 2020, Orbit began doing business under the assumed name, Climax Solar (Orbit and Climax Solar are referred to hereafter, collectively, as "Climax"). At all relevant times, Thompson directed, controlled, and/or actively participated in the intentional acts and conduct described below and set forth in the causes of action to this Complaint.

## JURISDICTION AND VENUE

5. This Court has original jurisdiction over this case under 28 U.S.C. §1331 whereby the district courts shall have original jurisdiction of any civil action arising under the laws of the United States.

6. Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(1) and/or (2) because Climax resides within this judicial district and a substantial part of the events occurred in this district giving rise to Plaintiff's claims.

## FACTS

7. PHS is a solar energy company founded in 2014. PHS sells, designs, operates, finances, and installs solar panels and energy systems for residential and commercial applications.

8. Since its founding, PHS has invested substantial time and money to market and establish a nationally recognized name and mark in the solar energy field including, but not limited to, sponsoring numerous community and civic organizations and events.

9. In addition, PHS spends millions of dollars each year on advertising and marketing placements through mediums ranging from internet and social media to television, radio, and billboard advertising. PHS has maintained partnership, endorsement, and sponsorship deals with several professional sports organizations, such as the Detroit Lions and with Hall of Fame running back Barry Sanders, to name just a few.

10. For the year 2020, according to Solar Power World, PHS ranks number 7 among the top 235 solar contractors nationwide (*see* https://www.solarpowerworldonline.com/2020-top-solar-contractors/2020-top-residential-solar-contractors/).

11. PHS expends enormous time and sums of money, many millions of dollars per year, for lead generation to develop its sales. PHS has an internal team that, along with its marketing partners and external vendors, places ads through many different mediums. Each time there is return interest from a potential customer (or "prospect"), a form is generated requesting specific identifiers for that customer, whose information is then downloaded to PHS's customer relationship management ("CRM") and predictive dialer databases, to be placed on a lead list.

12. Throughout, the ads go through many different iterations and PHS makes strategic decisions concerning, (i) whether, and when, to refresh these ads and in which advertising mediums to place them; and (ii) how much to spend and in which markets. These decisions turn on months, if not years, of internal data collection, mining, and analysis. Once the preliminary lead list is developed, a Solar Development Adviser ("SDA") telephones the prospect to pre-qualify that customer for a solar energy system sale.

13. PHS's prequalification process involves the SDA asking the prospect a range of questions concerning the prospect's rooftop, utility company and ability to obtain financing through PHS which turns on the prospect's credit score and income. Once that information is collected, an appointment with the customer is set and a PHS sales representative assigned. At this juncture, the preliminary lead list has been updated based on the SDA having prequalified the prospect (the "PHS Qualified Lead List").

14. PHS goes to great lengths to protect and safeguard its confidential and proprietary data, restricting access as much as possible to management level and above. PHS encrypts its data

and utilizes unique username and password combinations to access the same. In addition, PHS's vendors go through a rigorous vetting process, following which they enter into non-disclosure agreements.

15. Upon information and belief, Climax began operating in May 2020. Climax sells, installs, and finances solar energy products.

16. In April 2020, Thompson and Climax, through a former PHS employee hired by Climax, wrongly came into possession of PHS's lead lists and other confidential and proprietary information and trade secrets, including such things as its customer and market data, strategic and operating plans, sales strategies, marketing plans, pricing information, and associated financial and budgetary information.

17. Thompson, with full knowledge of the illegal nature of such conduct and the simple fact that such information and lists did not belong to Climax, then downloaded PHS's confidential business information to his own and/or Climax's private electronic devices for use by Climax.

18. At Thompson's direction and control, Climax used this information to contact PHS's actual and prospective customers to entice them to breach their existing or prospective agreements with PHS.

19. PHS's lead lists consisted of hundreds of thousands of names. Being a new company, and having struggled with obtaining its own leads, Climax's employees began calling PHS's leads eight (8) hours per day from which Climax would set, or reset, an appointment or obtain a referral. When questioned by the prospect as to how Climax obtained their name, rather than identify PHS, the Climax employee would refer to the internet, generally; that is, that the prospect must have clicked something online.

20. For each lead that Climax contacted, PHS had already provided a quote, and some prospects were already on a schedule for installation. Upon information and belief, to gain that prospect's business, Climax would provide false, disparaging information regarding PHS's pricing and cost structure specifically calculated to usurp PHS's prospect.

21. Climax relied almost exclusively upon PHS's lead lists to build its company, declining to develop its own due to the inherent time and expense involved. From the start, internally, Climax even identified its leads as coming from PHS, later scrubbing that reference.

22. Customers thereafter abandoned PHS in favor of Climax owing to statements and representations made by Climax specifically designed to flip the customer. Taking into account the number of monthly leads spread among Climax's sales representatives and the appointments set stemming from just a fraction of those contacted, PHS estimates the lost revenue from the resulting sales to be in the millions of dollars.

23. Thus, rather than spend its own time and money to develop its own leads and business model as PHS did, Climax's actions and conduct were specifically calculated to capitalize on PHS's substantial time investment in order to solicit PHS's actual and prospective customers and thereby gain sales revenue and enhance profits. Climax even used PHS's "Solar Agreement" as its own, replacing name identifiers only.

24. On April 7, 2021, PHS issued a Cease and Desist letter (the "PHS Demand") to Thompson and Climax demanding, *inter alia*, that Climax return PHS's trade secrets and confidential business information. Through this date, Climax has neglected to respond to the PHS Demand.

25. Instead, almost immediately upon having received the PHS Demand, Climax's inside sales manager instructed Thompson's administrative assistant to put Climax's in-house lead

list containing PHS's leads onto a USB flash drive and to then delete the list from Climax's G Suite.

## COUNT I
### (Tortious Interference with Prospective Contractual Relations)

26. Plaintiff hereby realleges and incorporates by reference the allegations contained in Paragraphs 1 through 25.

27. PHS developed, through the expenditure of significant time and resources, customer lead lists having the potential for valuable business relationships and goodwill.

28. The Defendants were aware of these potential, valuable business relationships at the time when they engaged in the wrongful conduct alleged herein.

29. There is a reasonable probability that PHS and third parties would have entered into contractual relationships based on the extensive and comprehensive lead lists acquired by Climax.

30. Climax has wrongfully prevented those relationships from developing, and did otherwise intend to prevent those relationships from developing without justifiable cause.

31. As a result of the above-stated conduct, the Defendants are liable to the Plaintiff for the damages they have caused it to incur, plus interest, costs, and reasonable attorneys' fees.

## COUNT II
### (Tortious Interference with Business Relations)

32. Plaintiff hereby realleges and incorporates by reference the allegations contained in Paragraphs 1 through 31.

33. PHS had developed valuable business relations with third parties with the likelihood of future economic benefit to PHS.

34. By virtue of the PHS leads and Climax, in turn, having set appointments from those leads, Climax knew about those relationships.

35. Climax intentionally and wrongfully disrupted those relationships without justifiable cause.

36. By the above-stated conduct, the Defendants are liable to the Plaintiff for the damages they have caused it to incur, plus interest, costs, and reasonable attorneys' fees.

## COUNT III
### (Unjust Enrichment)

37. Plaintiff hereby realleges and incorporates by reference the allegations contained in Paragraphs 1 through 36.

38. By the Defendants' knowing and intentional conduct, PHS has been deprived of the fair market value for its products and services since it unknowingly conferred benefits upon the Defendants.

39. The Defendants have been unjustly enriched by such conduct, the retention of which benefit would be inequitable.

40. Equity and good conscience require restitution.

41. Accordingly, the Defendants are liable to the Plaintiff in equity for the fair market value attributable to the Defendants' misconduct, and to the lost sales opportunities and revenues resulting from the Defendants having used PHS's lead lists to sell solar energy products.

## COUNT IV
### (Unfair Competition)

42. Plaintiff hereby realleges and incorporates by reference the allegations contained in Paragraphs 1 through 41.

43. The Defendants have been using Plaintiff's lead lists for the purpose of selling Climax's solar energy products, thereby converting the Plaintiff's confidential business information for their own use.

44. The Defendants provided false, disparaging information regarding the Plaintiff's pricing and cost structure specifically calculated to usurp PHS's prospects. As a result of the Defendants' misappropriation, PHS's potential customers have been deceived or are likely to be deceived.

45. The Defendants' misappropriation of PHS's trade secrets and confidential business information constitutes unfair competition.

46. Accordingly, pursuant to the above-stated conduct, the Defendants are liable to the Plaintiff for the damages they have caused it to incur, plus interest, costs, and reasonable attorneys' fees.

## COUNT V
**(Misappropriation of Trade Secrets – Violation of Mich. Comp. Laws § 445.1903)**

47. Plaintiff hereby realleges and incorporates by reference the allegations contained in Paragraphs 1 through 46.

48. As stated above, PHS's customer lead lists and other confidential business information are the result of considerable time and investment made by PHS to sell its solar energy systems. PHS treats such information as a trade secret, only making it available to its field energy consultants to solicit sales from prospective customers.

49. PHS goes to great lengths to protect and safeguard its confidential and proprietary data, restricting access to the greatest extent possible by encrypting its data and utilizing unique username and password combinations to access same.

50. The Defendants acquired PHS's trade secrets and confidential business information by improper motive and means, and/or with knowledge or reason to know that PHS's trade secrets and confidential business information was acquired improperly.

51. By virtue of the above-stated wrongful conduct, which was willful and/or malicious in every respect, the Defendants intended to and did convert the Plaintiff's trade secrets for their own use, to compete unlawfully and improperly with PHS.

52. The Defendants' use of Plaintiff's trade secrets and confidential business information have subjected PHS to substantial, immediate, and irreparable harm and damages, for which the Defendants are liable.

53. The Defendants have or will cost the Plaintiff damages in an amount to be determined at trial including, without limitation, the Plaintiff's lost profits and the Defendants' wrongful profits derived by said unauthorized use.

### COUNT VI
### (Defend Trade Secrets Act – 18 U.S.C. § 1836(b)(1))

54. Plaintiff hereby realleges and incorporates by reference the allegations contained in Paragraphs 1 through 53.

55. As stated above, PHS's customer lead lists and other confidential business information are the result of considerable time and investment made by PHS to sell its solar energy systems and products in interstate commerce. PHS treats such information as a trade secret, only making it available to its field energy consultants to solicit sales from prospective customers.

56. At all relevant times, PHS took reasonable measures to keep its information secret, including restricting access to the greatest extent possible by encrypting its data and utilizing unique username and password combinations to access same.

57. The Defendants acquired PHS's trade secrets and confidential business information by improper motive and means, and/or with knowledge or reason to know that PHS's trade secrets and confidential business information was acquired improperly.

58. PHS's lead lists derive independent economic value, both actual and potential, from not being generally known to, or readily ascertainable through proper means by another, who can obtain economic value from their disclosure or use.

59. The Defendants relied on PHS's lead lists to solicit customers and took advantage of PHS's trade secrets to obtain an economic benefit, competitive advantage, and other commercial value to the detriment of PHS.

60. The Defendants' use of Plaintiff's trade secrets and confidential business information have subjected PHS to substantial, immediate, and irreparable harm and damages, for which the Defendants are liable.

61. The Defendants have or will cost the Plaintiff damages in an amount to be determined at trial including, without limitation, the Plaintiff's lost profits and the Defendants' wrongful profits derived by said unauthorized use.

## COUNT VII
**(Commercial Disparagement)**

62. Plaintiff hereby realleges and incorporates by reference the allegations contained in Paragraphs 1 through 61.

63. To gain a prospect's business, Climax made disparaging statements either orally and/or in writing to potential customers on the PHS Qualified Lead List regarding PHS's pricing and cost structure specifically calculated to usurp PHS's prospect.

64. The Defendants made such statements with knowledge of their falsity or with a reckless disregard for their truth.

65. The Defendants knew that by making such false statements, there was a reasonable likelihood that Climax would obtain the prospect and thereby cause financial loss to PHS.

66. Accordingly, pursuant to the above-stated conduct, the Defendants are liable to the Plaintiff for the damages they have caused it to incur, plus interest, costs, and reasonable attorneys' fees.

## COUNT VIII
### (Lanham Act – 15 U.S.C. § 1125(a)(1))

67. Plaintiff hereby realleges and incorporates by reference the allegations contained in Paragraphs 1 through 66.

68. To gain a prospect's business, Climax made false or misleading descriptions of fact, or false or misleading representations of fact, either orally and/or in writing to potential customers on the PHS Qualified Lead List regarding, *inter alia*, PHS's pricing and cost structure.

69. The Defendants made such statements and/or representations in a commercial advertising or promotion context and did thereby misrepresent the nature, characteristics, and qualities of PHS's goods, services, and/or commercial activities.

70. The Defendants made such statements and/or misrepresentations for the purpose of influencing customers to buy Climax's solar goods and services, and not those of PHS, to PHS's financial detriment.

71. Accordingly, pursuant to the above-stated conduct, the Defendants are liable to the Plaintiff for the damages they have caused it to incur, plus interest, costs, and reasonable attorneys' fees.

## COUNT IX
### (Civil Conspiracy)

72. Plaintiff hereby realleges and incorporates by reference the allegations contained in Paragraphs 1 through 71.

11

73. The Defendants, through a former PHS employee hired by Climax, entered into an agreement whereby they wrongly came into possession of PHS's lead lists and other confidential and proprietary information and trade secrets.

74. Thompson downloaded PHS's confidential business information to his own and/or Climax's private electronic devices for use by Climax.

75. The Defendants thereby wrongfully obtained and retained possession of the Plaintiff's confidential and proprietary business information for an unlawful purpose, thereby depriving PHS of its possession and/or economic interest in its customer lead lists.

76. The Defendants have been using Plaintiff's lead lists for the purpose of selling Climax's solar energy products, thereby converting the Plaintiff's confidential business information for their own use.

77. Accordingly, pursuant to the above-stated conduct, the Defendants are liable to the Plaintiff for the damages they have caused it to incur, plus interest, costs, and reasonable attorneys' fees.

## COUNT X
### (Conversion)

78. Plaintiff hereby realleges and incorporates by reference the allegations contained in Paragraphs 1 through 77.

79. PHS's lead lists and confidential business information belong to PHS and, at all relevant times, were rightfully possessed by PHS.

80. The Defendants have wrongfully obtained and retained possession of the Plaintiff's confidential and proprietary business information for an unlawful purpose, thereby depriving PHS of its possession and/or interest in its customer lead lists.

81. The Defendants have been using Plaintiff's lead lists for the purpose of selling Climax's solar energy products thereby converting the Plaintiff's confidential business information for their own use.

82. Accordingly, the Defendants are liable to the Plaintiff for having converted PHS's confidential and proprietary business information, without permission and contrary to Plaintiff's rights, causing damage to PHS.

### COUNT XI
### (Conversion - Violation of Mich. Comp. Laws § 600.2919a)

83. Plaintiff hereby realleges and incorporates by reference the allegations contained in Paragraphs 1 through 82.

84. PHS's lead lists and confidential business information belong to PHS and, at all relevant times, were rightfully possessed by PHS.

85. The Defendants have wrongfully received and retained possession of the Plaintiff's confidential and proprietary business information for an unlawful purpose, which they knew to have been wrongfully taken, stolen, and/or converted, thereby depriving PHS of its possession and/or interest in its customer lead lists.

86. The Defendants have been using Plaintiff's lead lists for their own purpose of selling Climax's solar energy products thereby converting the Plaintiff's confidential business information for their own personal use in violation of Mich. Comp. Laws § 600.2919a(1)(a) and/or (b).

87. Accordingly, the Defendants are liable to the Plaintiff for treble the amount of actual damages incurred by PHS, plus interest, costs and reasonable attorneys' fees.

**WHEREFORE**, the Plaintiff, Power Home Solar, LLC, respectfully requests that this Honorable Court grant it the following relief:

13

1. Pursuant to Counts I - V and VII - X, judgment against the Defendants for the damages they have caused Plaintiff to incur, plus interest, costs, and reasonable attorneys' fees;

2. Pursuant to Count VI, judgment against the Defendants for double the amount of actual damages they have caused Plaintiff to incur, plus interest, costs, and reasonable attorneys' fees;

3. Pursuant to Count XI, judgment against the Defendants for treble the amount of actual damages they have caused Plaintiff to incur, plus interest, costs, and reasonable attorneys' fees; and,

4. Such other and further relief as this Court deems just and equitable.

## JURY DEMAND

PLAINTIFF HEREBY CLAIMS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.

**POWER HOME SOLAR LLC**

By its Attorneys,

Dated: October 27, 2021

*/s/ Conor B. Dugan*
Conor B. Dugan
WARNER NORCROSS + JUDD LLP
150 Ottawa Avenue, Suite 1500
Grand Rapids, Michigan 49503
(616) 752-2000
conor.dugan@wnj.com

and

Douglas B. Otto*
DARROW EVERETT LLP
One Boston Place
Suite 2600
Boston, Massachusetts 02108
(617) 443-4500
dotto@darroweverett.com

*Admission to the Western District forthcoming