UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

POWER HOME SOLAR, LLC,

    Plaintiff,

v.

ORBIT MARKETING, LLC, et al.,

    Defendants.
_____/

Case No. 1:21-cv-910

HON. JANE M. BECKERING

## OPINION AND ORDER

This dispute arises from Plaintiff Power Home Solar, LLC's claim that Defendants Orbit Marketing, LLC (d/b/a Climax Solar) ("Climax") and Climax's CEO Joshua Thompson ("Thompson") misappropriated Plaintiff's confidential and proprietary business information and trade secrets (Compl., ECF No. 1). Now pending before the Court is Defendants' Motion to Dismiss for Failure to Join an Indispensable Party (ECF No. 9). Plaintiff filed a response in opposition (ECF No. 13), and Defendants filed a reply (ECF No. 16). Having considered the parties' submissions, the Court concludes that oral argument is not necessary to resolve the issues presented. *See* W.D. Mich. LCivR 7.2(d). For the following reasons, the Court denies the motion.

    **I.**    **BACKGROUND**

    **A.**    **Factual Background**

Plaintiff is a solar energy company that sells, designs, operates, finances, and installs solar panels and energy systems for residential and commercial applications (Compl., ¶ 7). According to Plaintiff, they have "invested substantial time and money to market and establish a nationally recognized name and mark in the solar energy field" and have expended "many millions of dollars

per year" for lead generation and sales development (*id.* ¶¶ 8–9, 11). The lead generation process essentially proceeds in three steps. First, Plaintiff works with an internal team to market and advertise.[1] Second, when a return interest from a potential customer or "prospect" is received, the information is downloaded and placed on databases (*id.*). From this—an initial lead list is developed, and a Solar Development Adviser ("SDA") then telephones the potential customers to prequalify them for a solar energy system sale (*id.* ¶¶ 12–13). The SDA also collects additional information from the prospect regarding their rooftop, utility company, and ability to obtain financing; an appointment is set; and one of Plaintiff's sales representatives is assigned (*id.* ¶ 13). Last, the preliminary lead list is updated based on the SDA's prequalification of the prospect (the "Lead List") (*id.*). Plaintiff takes "great lengths to protect and safeguard" confidential and proprietary data, including the Lead List, by, for example: restricting access; using encryption and vigorous vetting processes; and requiring non-disclosure agreements (*id.* ¶ 14).

According to Plaintiff, Climax began selling, installing, and financing solar energy products in May 2020. Plaintiff alleges that in April 2020, Thompson and Climax "wrongly came into possession of [Plaintiff]'s lead lists and other confidential and proprietary information and trade secrets" through a former employee of Plaintiff's later hired by Climax (*id.* ¶ 16). Plaintiff contends the information included "customer and market data, strategic and operating plans, sales strategies, marketing plans, pricing information, and associated financial and budgetary information" (*id.*). Plaintiff contends that Defendant Thompson had "full knowledge of the illegal nature" of Thompson's and Climax's possession of the information but continued to download the confidential business information to his and Climax's "private electronic devices for use by

---

[1] Plaintiff alleges that these advertisements involve many strategic decisions concerning when and where to place or refresh the ads and how much to spend in which markets, which "turn[s] on months, if not years, of internal data collection, mining, and analysis" (Compl., ¶ 12).

Climax" (*id.* ¶ 17). Plaintiff further asserts that Climax used the information to contact actual and prospective customers of Plaintiff's "to entice them to breach their existing or prospective agreements" with Plaintiff, at Thompson's "direction and control" (*id.* ¶ 18). Plaintiff asserts that Climax employees called Plaintiff's leads "eight (8) hours per day" to set appointments, obtain referrals, and "provid[ed] false, disparaging information regarding [Plaintiff]'s pricing and cost structure specifically calculated to usurp" Plaintiff's prospects (*id.* ¶¶ 19–20).

Plaintiff claims that "Climax relied almost exclusively" on Plaintiff's lead lists and substantial time investment to "build its company" and solicit Plaintiff's actual and prospective customers to gain sales revenue and enhance profits (*id.* ¶¶ 21–23). As a result of Climax's actions, Plaintiff asserts that customers "abandoned" Plaintiff in favor of Climax, and estimates "lost revenue from the resulting sales to be in the millions of dollars" (*id.* ¶ 22).

On April 7, 2021, Plaintiff issued a cease-and-desist letter to Defendants, demanding in part that Climax "return [Plaintiff]'s trade secrets and confidential business information" (*id.* ¶ 24). Plaintiff claims that Climax "scrub[bed]" references to its leads coming from Plaintiff, and "almost immediately" upon receiving the letter, put Climax's lead list "containing [Plaintiff]'s leads" onto a flash drive and removed the list from Climax's files (*id.* ¶¶ 21, 25).

According to Defendants, the facts relevant to Plaintiff's action "began in the early months of 2020" when Caleb Scribner ("Scribner") expressed interest in joining Climax (ECF No. 9 at PageID.27).[2] Defendants assert that Scribner "approached Mr. Thompson to inform him that he had compiled a list of sales leads with customer names, addresses, phone numbers, and other assorted contact information (the 'Lead List')" (*id.*). Defendants assert that Scribner told them

---

[2] In their motion, Defendants draw their factual allegations from a Verified Complaint, signed by Thompson and filed in Kalamazoo County Circuit Court by Climax and Thompson against Scribner and a company through which Scribner allegedly conducts business (ECF No. 9 at PageID.27).

3

that the Lead List "could be used … to generate future sales" and that he had obtained the list from another individual "in the solar energy system sales industry in Michigan" "when [Scribner] provided services for another solar energy systems provider, a non-party to this action" (*id.*). Defendants acknowledge that Defendant Thompson was provided direct access to Scribner's email account, where he "downloaded the Lead [L]ist and placed it on Climax Solar's shared electronic resources with Mr. Scribner's permission" (*id.* at PageID.28). Defendants state that "[a]long with additional lead lists developed or purchased by Climax Solar, the company used the information on the Lead List to contact prospective customers to attempt to sell them Climax Solar's energy systems during the Company's first few months of existence" (*id.*)

Defendants also state that Defendant Thompson and other employees "became concerned" about Scribner's sales practices in late 2020 (*id.*). Such practices included falsely impersonating Thompson or other employees of Climax to customers, falsely informing customers of rebates or discounts, and forging signatures on financing documents, among other practices (*id.*). Defendants assert that Scribner was suspended before Scribner eventually returned to Climax as an independent contractor/sales agent only (*id.*). Despite this suspension, Defendants contend that Scribner's "inappropriate sales practices" continued, and Climax "obtained evidence that indicated Mr. Scribner made sales on behalf of other competitors to Climax Solar and may have been using leads and other related customer information belonging to Climax Solar for his own purposes" (*id.* at PageID.29). Defendants terminated Scribner in February 2021 (*id.*).

Defendants further assert that they received a phone call in March 2021 from Plaintiff's President or CEO, informing Defendants of their "unlawful possession" of Plaintiff's information, including the Lead List (*id.*). Defendants state that Climax "immediately ceased using the Lead List that had been presented to it by Mr. Scribner," and claimed that the Lead List was, by that time, "seldom referenced" and that Climax had developed leads through its own investment and

efforts (*id.*). Prior to and following receipt of Plaintiff's cease-and-desist letter, Defendants also state that neither Thompson nor anyone at Climax "had any reason to believe the Lead List was a protected trade secret or constituted information belonging to [Plaintiff], nor … that the Lead List had been regarded as confidential or proprietary" (*id.*).

### B.   Procedural Posture

Plaintiff initially filed a lawsuit against Defendants Climax and Thompson on August 16, 2021, asserting diversity jurisdiction (*see Power Home Solar LLC v. Orbit Marketing LLC et al.*, 1:21-cv-703, ECF No. 1). The Honorable Hala Y. Jarbou entered an order to show cause, ordering Plaintiff to file an amended complaint demonstrating the existence of diversity jurisdiction as to Plaintiff LLC's membership, and thus citizenship (*see id.,* ECF No. 11). Plaintiff failed to file a response or amended complaint, and the action was dismissed without prejudice on October 1, 2021 (*see id.*, ECF Nos. 12, 13). On October 12, 2021, Defendants Climax and Thompson filed a state court action against Scribner and Alpha Marketing, LLC (Scribner's alleged business) in the Kalamazoo County Circuit Court, alleging claims against Scribner for breach of his employment contract, unjust enrichment, promissory estoppel, breach of his duty of loyalty and fiduciary duty, negligent and fraudulent misrepresentation, defamation, tortious interference, and misappropriation of trade secrets (*see* ECF No. 9-1).

On October 27, 2021, Plaintiff re-filed the instant action against Defendants Climax and Thompson, asserting federal-question jurisdiction pursuant to claims under the Defend Trade Secrets Act (18 U.S.C. § 1836(b)(1)) and the Lanham Act (15 U.S.C. §1125(a)(1)) (ECF No. 1), as well as several state-law claims, including tortious interference with prospective contractual and business relations, unjust enrichment, unfair competition, misappropriation of trade secrets, commercial disparagement, civil conspiracy, and conversion (*see id.* at PageID.6–13). On November 29, 2021, Defendants filed the instant motion to dismiss (ECF No. 9), arguing that

5

Scribner is a necessary party under Federal Rule of Civil Procedure 19.  Plaintiff filed a response, and Defendants filed a reply.

## II.  ANALYSIS

### A.  Rule 19 Joinder

Defendants' motion is filed pursuant to Rules 12(b)(7) and 19.  *See* FED. R. CIV. P. 12(b)(7), 19. Rule 12(b)(7) of the Federal Rules of Civil Procedure provides that a party may seek dismissal of an action for "failure to join a party under Rule 19."  Defendants argue that Plaintiff failed to join Scribner, a necessary and indispensable party under Rule 19, without whom Defendants cannot adequately defend themselves (ECF No. 9 at PageID.26).

Under Rule 19, district courts apply a three-step analysis "for determining whether a case should proceed in the absence of a particular party."  *PaineWebber, Inc. v. Cohen*, 276 F.3d 197, 200 (6th Cir. 2001) (citation omitted).  As articulated by the Sixth Circuit, the court must determine (1) whether the person or entity is a necessary party under Rule 19(a); (2) if the person or entity is a necessary party, whether joinder would rid the court of subject matter jurisdiction; and (3) if the absent party is indispensable, i.e. the person or entity must be joined but joinder is not feasible, the court then turns to Rule 19(b) to determine whether the court should "in equity and good conscience" dismiss the case.  *Id; see Glancy v. Taubman Centers, Inc.*, 373 F.3d 656, 666 (6th Cir. 2004) (internal citations omitted).  "Thus, a person or entity is only indispensable, within the meaning of Rule 19, if (1) it is necessary, (2) its joinder *cannot* be effected, and (3) the court determines that it will *dismiss the pending case* rather than proceed in the case without the absentee." *Glancy*, 373 F.3d at 666 (emphasis in original) (quotation omitted); *see Keweenaw Bay Indian Cmty. v. Michigan,* 11 F.3d 1341, 1346 (6th Cir. 1993) (same).

Looking to Rule 19(a), Defendants argue that inconsistent rulings may arise because "Plaintiff is claiming a number of different allegations against the Defendants based on the theory

6

that Climax Solar and Mr. Scribner knowingly stole and used trade secrets belonging" to Plaintiff but that Defendants "did not have any knowledge that such trade secrets were improperly obtained, nor did they have evidence to show that the information brought to them by Mr. Scribner constituted a trade secret of [Plaintiff] or any other party" (*id.* at PageID.33–34). Defendants further assert that "[t]he state court litigation relies on the same material facts described in Plaintiff's complaint in this litigation" and thus, "two different courts would be considering the same factual questions to resolve substantially similar claims[,]" leading to a "very real possibility" of inconsistent rulings (*id.*).

In response, Plaintiff argues that Scribner is not a necessary party because "complete relief can be accorded to the existing parties" in Scribner's absence, and that his interest does not leave Defendants "subject to a substantial risk of incurring inconsistent obligations" (ECF No. 13 at PageID.83). Plaintiff asserts that Defendants "have cleverly blurred the line" between allegations that Scribner "stole" Plaintiff's trade secrets and allegations that Defendants used Plaintiff's trade secrets "post-theft." (*id.*). Plaintiff maintains that this case is not about what Scribner did with Plaintiff's lead list once received by Thompson, which is the subject of the state case, but rather, what Climax did with Plaintiff's lead list once obtained by Thompson (*id.*) Plaintiff claims it has direct evidence from multiple sources that "Thompson knew exactly where the leads came from" (*id.*). Specifically, Plaintiff states:

> Defendants believe that Scribner is the sole source of the Plaintiff's evidence as to Thompson's conduct, but he is not. Regardless of what Scribner may have told Thompson regarding the origins of the lead list, that is neither determinative of [Plaintiff]'s set of facts nor controlling as to the claims by [Plaintiff] in this lawsuit. [Plaintiff] has direct evidence, from multiple sources - - *not including Scribner*, that Thompson knew exactly where the leads came from. Scribner, therefore, is not a necessary party to [Plaintiff]'s facts despite what Thompson might otherwise believe.

7

(*id.*) (emphasis in original).  Last, Plaintiff asserts that Defendants can adequately defend their interests by bringing Scribner in through discovery devices if they believe he is essential to their defense in this case (*id.* at PageID.83–84).

The parties do not dispute, however, that Scribner's joinder to the present case is not feasible because of the lack of diversity jurisdiction (Scribner is believed to be a resident of Michigan) and the lack of federal claims against Scribner (ECF No. 9 at PageID.34; ECF No. 13 at PageID.84).

If a party is deemed a necessary party under Rule 19(a), but the court cannot exercise personal or subject matter jurisdiction over the party, Rule 19(b) provides four factors to apply in determining whether the party is indispensable, and the action should be dismissed.  The court must consider "(1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties; (2) the extent to which any prejudice could be lessened or avoided…; (3) whether a judgment rendered in the person's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder." FED. R. CIV. P. 19(b).

Defendants assert that Scribner is an indispensable party, and that all of the necessary factors under Rule 19(b) exist to properly dismiss this case (ECF No. 9 at PageID.32).  Defendants assert that Scribner's absence would prejudice both parties because the pending state court matter will resolve significant questions as to whether the Lead List was "an improperly acquired trade secret[;]" whether Scribner is liable to Defendants; and whether Defendants "knowingly used Plaintiff's trade secret information" (*id.* at PageID.35–36).  Defendants assert that continuing with the instant litigation would "force" Defendants "to argue the same issues and facts in two different venues simultaneously" and result in "conflicting rulings" from "separate courts arising out of the same transactions or occurrences" (*id.* at PageID.35). According to Defendants, they are agreeable

8

to a dismissal without prejudice, and also assert that "Plaintiff has several avenues of relief because they can '[file its] own complaint against Mr. Scribner," "join[] him as a party to the present litigation if Federal questions of law are available for relief," or "join[] the already pending state-court suit as a party to seek relief" (*id.*).[3]

In response, Plaintiff argues that Scribner is not an indispensable party. First, Plaintiff asserts that a judgment in Scribner's absence will not prejudice the existing parties because Defendants' allegations and claims against Scribner in state court "have no bearing on the outcome of [Defendants'] culpability in the instant matter," as their claims include "independent claims against Scribner based on a services contract, and for alleged defamation, conversion and for misappropriation of trade secrets—all having nothing to do with [Plaintiff]" (ECF No. 13 at PageID.85). Further, Plaintiff asserts that while the state court litigation "may resolve questions as to whether the Defendants had actual knowledge as to the origin of the lead list, Plaintiff's misappropriation claims can be satisfied by either actual or constructive knowledge" and "Scribner is not the sole source of [Plaintiff]'s allegations" (*id.*). Plaintiff asserts that waiting until the state court litigation is resolved for Plaintiff to pursue its claims further prejudices Plaintiff and "is not adequate in the face of the current stage of the instant litigation and the time, energy, and expense that has already accrued" (ECF No. 13 at PageID.86). Plaintiff further argues that the "most relevant" interest to protect is that of the absentee party, who would not be prejudiced if the instant litigation proceeds (*id.*) (citing *Kickapoo Tribe of Indians of Kickapoo Rsrv. in Kansas v. Babbitt*, 43 F.3d 1491, 1497 n.9 (D.C. Cir. 1995) ("The inquiry as to prejudice under Rule 19(b) is the same

---

[3] Defendants further assert that Plaintiff is "unable to retain complete relief" in the instant litigation because Scribner is the "actual liable party to Plaintiff's claims and allegations" and that Plaintiff could "re-file this case" to the extent a final judgment from the state court does not "exculpate the Defendants" (ECF No. 9 at PageID.35–36).

9

as the inquiry under Rule 19(a)(2)(i) regarding whether continuing the action will impair the absent party's ability to represent its interest.").

Plaintiff's argument has merit.

Rule 19 dismissal "is not the preferred outcome … . Courts are reluctant to dismiss for failure to join where doing so deprives the plaintiff of his choice of federal forum." *Askew v. Sheriff of Cook Cnty., Ill.*, 568 F.3d 632, 634 (7th Cir. 2009) (quotation omitted). Rather, "[t]he purpose of Rule 19 is to permit joinder of all materially interested parties to a single lawsuit so as to protect interested parties and avoid waste of judicial resources." *Id*. (quotation and citation omitted).

First, looking to Rule 19(a), Defendants' claim that no complete relief can be accorded in the absence of Scribner lacks merit. The Sixth Circuit has stated that "Rule 19 calls for a pragmatic approach; simply because some forms of relief might not be available due to the absence of certain parties, the entire suit should not be dismissed if meaningful relief can still be accorded." *Smith v. United Bhd. of Carpenters & Joiners of Am.*, 685 F.2d 164, 166 (6th Cir. 1982). Here, Plaintiff alleges that Thompson, with full knowledge of the illegal nature of the source of the information, downloaded Plaintiff's confidential business information to his and/or Climax's private electronic devices for use by Climax. Therefore, Plaintiff asserts that under Rule 19(a)(1)(A), complete relief can be accorded among the existing parties. Indeed, even if Scribner may be a highly relevant witness, this Court is able to accord Plaintiff relief for its claims against Defendants without Scribner being brought in as a party. By contrast, Defendants focus on Rule 19(a)(1)(B)(ii) to argue that Scribner has an interest in the litigation and proceeding in his absence would impair or impede his ability to protect that interest. However, a "crucial premise of mandatory joinder" is that the absent party has a "legally protected" interest, that is, "more than a financial stake, and more than speculation about a future event." *Cachil Dehe Band of Wintun Indians of the Colusa*

*Indian Cmty. v. California*, 547 F.3d 962, 970 (9th Cir. 2008). At present, it is the existing Defendants that assert that prejudice will result in Scribner's absence. Moreover, Defendants' claimed risk of inconsistent adjudications or results does not require joinder of all potential parties:

> Unlike a risk of inconsistent obligations, a risk that a defendant who has successfully defended against a party may be found liable to another party in a subsequent action arising from the same incident—i.e., a risk of inconsistent adjudications or results—does not necessitate joinder of all of the parties into one action pursuant to Fed.R.Civ.P. 19(a). Moreover, where two suits arising from the same incident involve different causes of action, defendants are not faced with the potential for double liability because separate suits have different consequences and different measures of damages.

*Delgado v. Plaza Las Americas, Inc.*, 139 F.3d 1, 3 (1st Cir. 1998) (internal citations omitted). Defendants' concerns are significantly less so here, as the state court proceeding is Defendants' own cause of action against Scribner and his business. Thus, there is not a substantial risk of incurring double, multiple, or inconsistent obligations because of Scribner's interest under Rule 19(a), and this Court determines that Scribner is not a necessary party.[4]

Because this Court concludes that Scribner is not a necessary party under Rule 19(a), analysis of the factors permitting dismissal under Rule 19(b) is not necessary. Even assuming that

---

[4] In their reply brief, Defendants cite *Composite Modules, Inc. v. Thalheimer Bros., Inc.*, 526 F.Supp.2d 160 (2007) as analogous and instructive. In *Composite Modules*, the court granted the defendant's motion to dismiss for failure to add the former employee as a party. However, the procedural facts in *Composite Modules* and this proceeding differ in several key respects. First, in *Composite Modules*, the underlying claim was one for state-law conversion only, and the court's sole basis for jurisdiction was complete diversity. *Id.* at 162. The plaintiff in that case also filed the relevant state court action against several Michigan defendants and had moved the state court to amend its complaint and join the federal defendant, Thalheimer. *Id.* Thalheimer opposed the plaintiff's proposed amendment in the state court action on the sole grounds of the pending federal suit against him. *Id.* Thus, the federal court dismissed the action, finding that Thalheimer's opposition to participating in the state suit would "necessarily dissolve" and that the state court was an "adequate forum in which all parties may be heard[.]" *Id.* Here, the Defendants propose dismissing the case without prejudice and/or staying the case pending the resolution of the state court suit, or alternatively ordering Plaintiff to join Scribner as a party. The parties do not dispute that the latter option is not feasible. If this Court were to dismiss this case without prejudice or stay the case pending the resolution of the state court suit, questions of judicial efficiency, prejudice to Plaintiff, and the adequacy of relief to both parties would persist.

Scribner was a necessary party, and because an independent basis for subject matter jurisdiction against Scribner does not exist, a balancing of Rule 19(b) and *PaineWebber*'s factors weighs in favor of permitting this action to proceed. If the absent party's interest is adequately represented by an existing party, then the risk of prejudice to the absent party is lessened. *See Glancy*, 373 F.3d at 667–69. Defendants have filed a state court action against Scribner, and as such, any prejudice to Defendants is also lessened or avoided. A judgment by this Court will be adequate as to Plaintiff's claims. Conversely, Plaintiff will not have an adequate remedy if the action is dismissed for nonjoinder.

Last, Defendants assert that because there is no independent basis for jurisdiction against Scribner, they may "be unable to bring forth a third-party case" (ECF No. 9 at PageID.34–35).[5] To the extent Defendants attempt to use Rule 19 dismissal to avoid liability to Plaintiff by blaming a third person for Plaintiff's injuries, they may not.[6] If Defendants have a basis to properly implead Scribner under Rule 14, they must appropriately move this Court to do so.

---

[5] *See Grimes v. Mazda N. Am. Operations*, 355 F.3d 566, 572 (6th Cir. 2004) ("It is well settled that supplemental jurisdiction exists over a properly brought third-party complaint."); *see also Banks v. City of Emeryville*, 109 F.R.D. 535, 540 (N.D. Cal. 1985) (quoting *Huggins v. Graves*, 337 F.2d 486, 489 (6th Cir. 1964) and stating, "it is permissible to implead third party defendants even if there is no basis for the third party defendants to be directly liable to the plaintiffs").

[6] "Rule 19(b) governs 'whether a case should proceed in the *absence* of a particular party.' In this case, [defendant] attempts to use Rule 19(b) as a mechanism for *including* [the third party] in this action. But Rule 19(b) does not serve that purpose." *Americon Grp., Inc. v. Marco Contractors, Inc.*, No. 14-cv-10785, 2015 WL 470594, at *3 (E.D. Mich. Feb. 4, 2015) (quoting *Ramco–Gershenson Properties, L.P. v. Hoover Annex Group LLC*, 228 F.R.D. 610, 614 (E.D. Mich. 2005) (emphasis in quotation)). Defendants' motion and argument under Rule 19, arguably "seek[] to initiate new claims" by Plaintiff or Defendants against Scribner in federal court, "who [is] currently not part of this litigation." *United States ex. rel. Branch Consultants, LLC v. Allstate Ins. Co.*, 265 F.R.D. 266, 270–71 (E.D. La. 2010). "This is the addition of a new arm of this lawsuit and not the mere addition of parties to the existing suit." *Id; see Brooks v. Hickman*, 101 F.R.D. 16, 18 (W.D. Pa. 1984) ("Rule 19 does not provide or support the introduction of a third-party defendant into a lawsuit. Rather, Rule 19 provides that the court may, under proper circumstances, require the joinder of a non-party as plaintiff, defendant, or involuntary plaintiff. It does not empower the court to order joinder of a third-party defendant, because that is what Rule 14 is for."); *see also*

### B. Abstention

Alternatively, Defendants seek dismissal under Rule 12(b)(7) on the grounds of abstention. According to the Supreme Court:

> Abstention from the exercise of federal jurisdiction is the exception, not the rule. "The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it. Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the State court would clearly serve an important countervailing interest."

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 14 (1983) (quoting *Colorado River Water Conservation Dist. v. U.S.,* 424 U.S. 800, 813 (1976)). A federal district court may abstain from exercising its subject matter jurisdiction due to the existence of a concurrent state court proceeding, based on "considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Colorado River,* 424 U.S. at 817 (internal quotation marks and citation omitted).

The Supreme Court has identified eight factors in *Colorado River* and in subsequent decisions that a district court must consider when deciding whether to abstain. *See Romine v. Compuserve Corp.,* 160 F.3d 337, 340–41 (6th Cir. 1998). The following factors are not a "mechanical checklist" but "require 'a careful balancing of the important factors as they apply in a give[n] case' depending on the particular facts at hand." *Romine*, 160 F.3d at 341 (quoting *Moses H. Cone,* 460 U.S. at 15–16); *PaineWebber, Inc.,* 276 F.3d at 206–07. "[T]he balance [is] heavily weighted in favor of the exercise of jurisdiction." *Id*.

The factors to consider include:

(1) whether the state court has assumed jurisdiction over any res or property;
(2) whether the federal forum is less convenient to the parties;

---

*E.E.O.C. v. Peabody W. Coal Co.,* 610 F.3d 1070, 1087 (9th Cir. 2010) ("Rule 19(b) was not intended to require the joinder of persons subject to impleader under Rule 14").

>     (3) avoidance of piecemeal litigation; ...
>     (4) the order in which jurisdiction was obtained[;] ...
>     (5) whether the source of governing law is state or federal;
>     (6) the adequacy of the state court action to protect the federal plaintiff's rights;
>     (7) the relative progress of the state and federal proceedings; and
>     (8) the presence or absence of concurrent jurisdiction.

*Romine*, 160 F.3d at 340–41 (citations omitted).

Defendants argue that "most of the claims against Defendants are claims that can be resolved in state court" and that "[n]o form of relief that Plaintiff is seeking is unique to Federal court" (ECF No. 9 at PageID.40). Defendants concede that the first and seventh factors are "largely irrelevant" or inapplicable here (ECF No. 9 at PageID.38, 40). Defendants claim that the remaining factors weigh in favor of abstention as the "state court would be an adequate forum to resolve the pending issues and offer Plaintiff with full and just relief" (*id.* at PageID.40).

In response, Plaintiff claims that "the first step in any *Colorado River* analysis is to first determine whether there is a *parallel* state proceeding before moving on to a consideration of the remaining factors. *See Romine*, 160 F.3d at 340." (ECF No. 13 at PageID.87). Specifically, Plaintiff contends that there are "vast differences between the ongoing state court litigation" and "the present federal dispute"—i.e., causes of action, theories of recovery, and defendants (*id.*). Further, Plaintiff highlights that Scribner has not yet answered or otherwise pled in the state court proceeding; and because the parties and claims in the state court proceeding are completely different from the instant action, "[t]he current state litigation is not … a parallel proceeding" (*id.*) (citing *Crawley*, 744 F.2d at 31) (finding it unnecessary to undertake the remaining abstention analysis when state and federal litigation contained different parties and claims, even where the state court claims could potentially be modified to become identical to the federal claims); *contra Romine*, 160 F.3d at 339–40 (finding action parallel where it contained same defendants, same causes of action, identical theories of recovery, and identical passages in relevant complaints).

14

Finally, Plaintiff asserts that even if this Court determines that the state and federal proceedings are parallel, the relevant factors weigh in favor of the exercise of federal jurisdiction (*see* ECF No. 13 at PageID.88–89).

Plaintiff's argument has merit.

Upon a balancing of the relevant factors, this Court determines that abstention is not appropriate in these circumstances. *PaineWebber, Inc.*, 276 F.3d at 206–07. First, the federal and state court actions at issue are not parallel proceedings. The state court action was brought by Defendants Climax and Thompson against a third party, Scribner, and Plaintiff is not a party. The state court action involves unique facts and causes of action arising from Scribner's employment, distinct from the facts plead or relevant to the instant case. Plaintiff's federal claims are not implicated, and the actions involve different theories of recovery, against and by different parties. *See, e.g., Healthcare Co. Ltd. v. Upward Mobility, Inc.*, 784 F. App'x 390, 394 (6th Cir. 2019) ("[I]n deciding whether a state action is parallel for abstention purposes, the district court must compare the issues in the federal action to the issues actually raised in the state court action, not those that might have been raised.").

Even assuming that the actions were parallel under *Colorado River*, the remaining factors in the analysis also weigh in favor of exercising federal jurisdiction. The first factor, whether the state court has assumed jurisdiction over any res or property, is inapplicable, and thus cuts against abstention. The remaining factors also support the exercise of federal jurisdiction in light of the "narrow exception" to the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." *Colorado River*, 424 U.S. at 817. The second factor favors the exercise of federal jurisdiction, as there is no indication that the federal forum is less convenient, in light of both the federal and state-law claims. Third, there is no risk of piecemeal litigation, because the claims before this Court are based on the independent actions of Climax and Thompson, regardless

of the outcome of the state court action against Scribner. Fourth, while the state court action was initiated prior to this proceeding, Plaintiff originally brought suit in this district at least two months prior to Defendants' initiation of the state court proceeding. As to the fifth, sixth, and last factor, the governing law in this action are the two federal claims, even if there is similar relief available, and the state court action will not adequately protect Plaintiff's federal rights, as this Court remains the only court with jurisdiction over Plaintiff's federal claims. Contrary to Defendants' arguments, this Court is not in a position to require Plaintiff to file or join a state court action (*see* ECF No. 9 at PageID.39–40), especially when the state court action may be non-dispositive of Plaintiff's claims. Last, the state court action has not significantly progressed, due to Scribner's failure to appear or defend in that action. As such, Defendants' motion is properly denied.

### III.  CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss (ECF No. 9) is DENIED.

**IT IS FURTHER ORDERED** that Defendants shall, not later than June 7, 2022, file an Answer to Plaintiff's Complaint.

Dated: May 24, 2022                                                       /s/ Jane M. Beckering
                                                                          JANE M. BECKERING
                                                                          United States District Judge